# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1810000819 |
| ANDRE JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: December 5, 2019
Date Decided: December 18, 2019

*On Defendant Andre Johnson's Motion to Suppress filed July 19, 2019*
**Denied in part.**
**Granted in part.**
*On Defendant Andre Johnson's Motion to Suppress filed July 22, 2019*
**Denied.**
*On Defendant Andre Johnson's Motion to Suppress filed September 6, 2019*
**Granted.**

## MEMORANDUM OPINION

Annemarie H. Puit, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

John S. Taylor, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Brian J. Chapman, Esquire, Law Office of Brian J. Chapman, Newark, Delaware, Attorney for Defendant Andre Johnson.

**SCOTT, J.**

## Introduction

On October 8, 2018, Defendant was indicted and charged with Murder 1st Degree, Possession of a Firearm during the Commission of a Felony, and Possession of a Firearm by a Person Prohibited in regards to the shooting of Barry White on September 3, 2017.[1] Before the Court are three Motions to Suppress from Defendant Andre Johnson ("Defendant"). Therein, Defendant challenges two warrants for the search of his cellphone ("Cell Phone") and related data as having violated his right to be free from unreasonable searches guaranteed under the Fourth and Fourteenth Amendments to the U.S. Constitution and Article I, § 6 of the Delaware Constitution. The Court has reviewed and considered the parties' written submissions, as well as evidence provided and arguments made by the parties at the suppression hearing. For the following reasons, Defendant's Motion to Suppress filed on July 19, 2019 is DENIED IN PART and GRANTED IN PART, Defendant's Motion to Suppress filed on July 22, 2019 is DENIED, and Defendant's Motion to Suppress filed on September 6, 2019 is GRANTED.

## Findings of Fact

On October 23, 2017, Defendant was arrested by the Wilmington Police Department ("WPD") on an active warrant for a domestic-related incident. The WPD seized Defendant's Cell Phone when they arrested Defendant. WPD officers

---

[1] Def.'s Mot. Suppress 2, Sept. 6, 2019.

2

conducted an interview with Defendant on October 23rd to obtain Defendant's side of the story for the alleged domestic-related incident, which occurred on October 20, 2017. Over the course of this interview, Defendant consented to the officers using his Cell Phone to find phone numbers for three individuals who could verify Defendant's alibi for October 20th and information related to those three phone numbers. Defendant also provided the officers with his Cell Phone's passcode.

Three warrants were issued for searches of Defendant's Cell Phone and related data. Defendant challenges the latter two warrants in his motions to suppress.

## A. Warrant A

The Justice of the Peace Court issued the first warrant ("Warrant A") on October 27, 2017. Warrant A authorized the search of Defendant's Cell Phone for evidence of a violation of 11 *Del. C.* § 602, Aggravated Assault, and 11 *Del. C.* § 1447, Possession of a Firearm during the Commission of a Felony. A WPD detective authored the affidavit of probable cause attached to the application for Warrant A.

The following facts are set forth in the affidavit of probable cause underlying Warrant A.[2] An aggravated menacing occurred on October 20, 2017 in the 2400 block of North Tatnall Street in Wilmington, Delaware. A Wilmington Patrol Unit responded to this incident. The victim, Latasha Selby, told police that her child's

---

[2] Warrant A and its underlying probable cause affidavit are attached to Defendant's Second Motion as Exhibit 1. Def.'s Mot. Suppress Ex. 1, July 22, 2019.

father—Defendant—pointed a silver firearm at her. Ms. Selby informed officers that Defendant appeared to chamber a round before pointing the handgun at her and telling her to "get . . . back." Ms. Selby then fled from the area because she feared for her life. Defendant ran in the other direction. An eyewitness corroborated Ms. Selby's story. After the aforementioned incident, police issued an arrest warrant for Defendant's arrest; the WPD charged Defendant with Aggravated Assault and Possession of a Firearm during the Commission of a Felony. On October 23, 2017, WPD officers arrested Defendant pursuant to that arrest warrant. Defendant agreed to speak with the officers about the incident and consented to the officers using his Cell Phone to find phone numbers for three individuals. While searching through Defendant's Cell Phone, the officers observed "incriminating text message[s]" from Defendant.[3] The officers then stopped their search and applied for Warrant A.

The affidavit underlying Warrant A requests permission for WPD officers to examine photographs, images, audio and visual recordings, text messages, web browsing activities, electronic documents, location information, call logs, telephone numbers and "any other information/data pertinent to this investigation within said scope, which represent evidence of Aggravated menacing and related offense(s)."[4]

---

[3] Def.'s Mot. Suppress Ex. 1, July 22, 2019 (affidavit of probable cause).
[4] Def.'s Mot. Suppress Ex. 1, July 22, 2019.

4

The search authorized by Warrant A was temporally limited to October 22, 2017 through October 26, 2017.[5]

### B. Warrant B

The Justice of the Peace Court issued the second warrant ("Warrant B") on December 28, 2017. Warrant B authorized the search of Defendant's Cell Phone for evidence of a violation of 11 *Del. C.* § 636, Murder 1st Degree, and related offenses. Warrant B requests permission for police to look at "any/all data stored by whatever means, or through normal course of business of an unknown wireless service, and/or through the forensic examination of said cellular telephone" including, but not limited to: photographs, images, audio and visual recordings, text messages, web browsing activities, electronic documents, location information, call logs, telephone numbers and "any other information/data pertinent to this investigation within said scope between the time frame of May 1st, 2017 to October 23rd, 2017."[6]

A WPD detective authored the affidavit of probable cause accompanying the application for Warrant B. The following facts are set forth in the affidavit of probable cause underlying Warrant B.[7] On September 3, 2017, the WPD was summoned to the Unit Block of West 26th Street in Wilmington, Delaware, in

---

[5] Def.'s Mot. Suppress Ex. 1, July 22, 2019.
[6] Def.'s Mot. Suppress Ex. A, Sept. 6, 2019.
[7] Warrant B and its underlying probable cause affidavit are attached to Defendant's Third Motion as Exhibit A. Def.'s Mot. Suppress Ex. A, Sept. 6, 2019.

response to a shooting. The victim of this shooting, Barry White, was found suffering from multiple gunshot wounds; Mr. White was later pronounced dead in the Christiana Hospital Emergency Room. At the crime scene, police located seven spent 9mm caliber shell casings. These shell casings were later entered into the Nationally Integrated Ballistic Identification Network ("NIBIN") and searched against other spent shell casings. The search resulted in ballistic matches for three other shooting incidents: (1) an Assault 1st Degree, which occurred on May 6, 2017 in the 100 Block of 14th Street; (2) a shots fired complaint, which occurred on May 30, 2017 in the 100 Block of West 27th Street; and (3) a Reckless Endangering 1st Degree, which occurred on June 20, 2017 in the 2200 Block of North West Street. On October 23, 2017, Defendant was arrested. When the WPD arrested Defendant, he had a black Smith and Wesson 9mm semi-automatic handgun in his possession. The handgun was test fired by the WPD's Forensic Services Unit. The spent shell casings from this test fire were entered into the NIBIN and searched against other casings in the system. The search resulted in ballistic matches for the shooting incidents on May 6, May 30, and June 20, 2017 and the killing of Barry White.

The WPD detective who authored the underlying affidavit stated that through his "training, knowledge, and experience" he knows that persons involved in criminal activities use mobile devices to facilitate criminal acts and communicate with co-conspirators. The WPD detective also stated that mobile devices process

6

and store an abundance of data that can be retrieved in a logical fashion. Finally, the WPD detective stated that a search of Defendant's Cell Phone was necessary to: i) determine if Defendant possessed the handgun during any of the four shooting incidents; ii) determine Defendant's motive for the shootings; iii) determine if any of the shootings were planned; and iv) identify any co-conspirators that may exist.[8]

### C. Warrant C

A judge of the Superior Court issued the third warrant ("Warrant C") on January 8, 2018. Warrant C authorized the search of Defendant's Cell Phone for evidence of a violation of 11 *Del. C.* § 636, Murder 1st Degree. Warrant C permitted police to search and seize any information related to Defendant's Cell Phone, including but not limited to: subscriber information, billing information, call detail records with corresponding cell site tower locations, latitude and longitude information for the related cell towers, and any and all electronic communications. The search authorized by Warrant C was temporally limited to May 1, 2017 through October 23, 2017.

A WPD detective authored the affidavit of probable cause accompanying the application for Warrant C. The following facts are set forth in the affidavit underlying Warrant C.[9] On September 3, 2017, Barry White was shot and killed on

---

[8] Def.'s Mot. Suppress Ex. A, Sept. 6, 2019.
[9] Warrant C and its underlying probable cause affidavit are attached to Defendant's First Motion as Exhibit A. Def.'s Mot. Suppress Ex. A, July 19, 2019.

the Unit Block of West 26th Street in Wilmington, Delaware. At the crime scene, police located seven spent 9mm caliber shell casings. These shell casings were later entered into the NIBIN and searched against other spent shell casings. The search resulted in ballistic matches for three other shooting incidents: (1) an Assault 1st Degree, which occurred on May 6, 2017 in the 100 Block of 14th Street; (2) a shots fired complaint, which occurred on May 30, 2017 in the 100 Block of West 27th Street; and (3) a Reckless Endangering 1st Degree, which occurred on June 20, 2017 in the 2200 Block of North West Street. On October 23, 2017, Defendant was arrested. When the WPD arrested Defendant, he had a black Smith and Wesson 9mm semi-automatic handgun in his possession. The shell casings from this handgun were ballistic matches for the shooting incidents on May 6, May 30, and June 20, 2017 and the killing of Barry White. Defendant also possessed a LG cellphone when police took him into custody. After a forensic extraction of the Cell Phone, the police determined the device's number was [(***) ***]-1230 and that it was in use during all three shooting incidents and the killing of Barry White.

The WPD detective stated that a subpoena was submitted to Metro PCS for subscriber, billing, and equipment information for the purpose of identifying the Cell Phone. The subpoena also requested preservation of all existing records related to the Cell Phone from May 1, 2017 to October 23, 2017, including: subscriber information, call detail records, cell phone tower signal records, and text message

8

content. The detective provided two reasons for why police wanted Warrant C: i) to determine the location of Defendant's Cell Phone on May 6, May 30, June 20, September 3, October 20, and October 23, 2017; and ii) to determine the subscriber information of the phones contacted by Defendant's Cell Phone from May 1, 2017 to October 23, 2017. Finally, the detective stated that through his "training, knowledge, and experience" he knows that persons involved in criminal activities use cellphones to communicate with co-conspirators. The affidavit also stated that cellular-service providers store lots of data, including cell site location information that can be GPS enabled, which can aid law enforcement in identifying the locations of the person using the cellphone.[10]

### D. The Independent Warrant

A judge of the Superior Court issued the final warrant ("Independent Warrant") on October 9, 2019. The Independent Warrant authorized the search of Defendant's Cell Phone for evidence of a violation of 11 *Del. C.* § 636, Murder 1st Degree. The Independent Warrant permitted police to search and seize any information related to Defendant's Cell Phone, including but not limited to: subscriber information, billing information, call detail records with corresponding cell site tower locations, latitude and longitude information for the related cell towers, and text messages sent from and received by Defendant's Cell Phone. The

---

[10] Def.'s Mot. Suppress Ex. A, July 19, 2019.

9

search authorized by the Independent Warrant was temporally limited to September 3, 2017 at 0401 hours UTC through September 4, 2017 at 0359 hours UTC.

A WPD officer authored the affidavit of probable cause accompanying the application for the Independent Warrant. The following facts are set forth in the affidavit underlying the Independent Warrant. On September 3, 2017, Barry White was shot and killed on the Unit Block of West 26th Street in Wilmington, Delaware. At the crime scene, police located seven spent 9mm caliber shell casings. These shell casings were entered into the NIBIN and searched against other spent shell casings. The search resulted in ballistic matches for three other shooting incidents: (1) an Assault 1st Degree, which occurred on May 6, 2017 in the 100 Block of 14th Street; (2) a shots fired complaint, which occurred on May 30, 2017 in the 100 Block of West 27th Street; and (3) a Reckless Endangering 1st Degree, which occurred on June 20, 2017 in the 2200 Block of North West Street. On October 23, 2017, Defendant was arrested. When the WPD arrested Defendant, he had a black Smith and Wesson 9mm semi-automatic handgun in his possession. The shell casings from this handgun were ballistic matches for the shooting incidents on May 6, May 30, and June 20, 2017 and the killing of Barry White. Defendant also had his Cell Phone in his possession when he was arrested by the WPD. On December 13, 2017, a subpoena was submitted to Metro PCS for certain information from Defendant's Cell Phone. Metro PCS responded to the December 13th subpoena on January 24,

10

2018. Based on Metro PCS's responses to the subpoena, the WPD officer confirmed in the affidavit underlying the Independent Warrant that Defendant's Cell Phone was in use between May 1, 2017 and October 23, 2017.

The WPD officer provided two reasons for why the WPD needed the Independent Warrant: to determine i) the location of Defendant's Cell Phone on September 3, 2017; and ii) the subscriber information of the phones contacted by Defendant's Cell Phone during the relevant time period. The WPD officer stated that the Independent Warrant would allow the WPD to identify persons and places relevant to the shooting of Mr. White and the other shooting incidents. Finally, the WPD officer stated that through his "training and experience" he knows that persons involved in criminal activities use cellphones to communicate with co-conspirators.

### Parties' Contentions

**A.      Defense Motion #1 – July 19, 2019**

Defendant filed his first Motion to Suppress ("First Motion") on July 19, 2019. Defendant asks this Court to suppress all evidence gathered by the police after the execution of Warrant C. Defendant argues that Warrant C did not have a reasonable temporal restriction because Warrant C authorized a search for information created during a five-month period but Mr. White was killed on September 3, 2017. Defendant further argues that Warrant C was overly broad because it permitted police to search his Cell Phone for call detail records, direct

11

communications, and text messages. Defendant contends Warrant C does not establish a logical nexus between the alleged offense and his Cell Phone.[11]

## B. Defense Motion #2 – July 22, 2019

Defendant filed his second Motion to Suppress ("Second Motion") on July 22, 2019. Defendant asks this Court to suppress all evidence gathered by the police after the execution of Warrant C. Defendant argues that the police exceeded the scope of Warrant A and used evidence obtained outside the scope of Warrant A in the affidavit of probable cause underlying Warrant C.

Warrant A limited the search of Defendant's Cell Phone to a five-day period: October 22, 2017 through October 26, 2017. Defendant alleges that the police exceeded the scope of Warrant A by downloading "information as far back as May of 2017."[12] Defendant alleges that Paragraph #6 from the affidavit underlying Warrant C includes information outside the scope of Warrant A:

> Your affiant can truly state that a search warrant was applied for and was granted for the mentioned LG cellular phone, model LGMS63. The mentioned phone was turned over to Detective William Ball to be forensically downloaded. Detective Ball conducted a forensic extraction of the cellular device, which was provided to me. The device's cellular number was determined to be [***-***]-1230 and was *in use during the time frames of all of the mentioned incidents that were ballistic matches to the firearm* that Johnson was found in possession of on 10/23/2017.[13]

---

[11] Def.'s Mot. Suppress 5–6, July 19, 2019.
[12] Def.'s Mot. Suppress 7, July 22, 2019.
[13] Def.'s Mot. Suppress Ex. 2, July 22, 2019 (emphasis added).

12

Defendant urges the Court to strike the "illegally" obtained information from the affidavit underlying Warrant C and review the sufficiency of the affidavit with only the remaining information.[14]

### C. Defense Motion #3 – September 6, 2019

Defendant filed his third Motion to Suppress ("Third Motion") on September 6, 2019. Defendant asks this Court to suppress all evidence gathered by the police after the execution of Warrant B. Defendant argues that the affidavit underlying Warrant B fails to establish a nexus between the alleged offenses and Defendant's Cell Phone because the language used in the affidavit underlying Warrant B was vague and general. Defendant contends that nothing in the affidavit establishes that he possessed that Cell Phone on September 3, 2017.[15] Further, Defendant argues that Warrant B was overbroad and insufficiently particularized. Defendant contends that Warrant B authorized a "fishing expedition" because of the vague and generalized language used in the affidavit and the overbroad nature of the request.[16]

### D. State's Response

On October 1, 2019, the State responded to Defendant's motions to suppress. The State argues that the affidavits underlying Warrants B and C contain sufficient probable cause to establish a nexus between the alleged crime—the murder of Barry

---

[14] Def.'s Mot. Suppress 7, July 22, 2019.
[15] Def.'s Mot. Suppress 6, Sept. 6, 2019.
[16] Def.'s Mot. Suppress 9, Sept. 6, 2019.

White—and Defendant's Cell Phone.[17] The State further argues that Warrants B and C satisfy the Delaware Supreme Court's desire for temporal limitations on search warrants for cellphone data.[18] Although the State posits that it would be appropriate for this Court to exclude evidence that was outside the scope of probable cause, the State also argues that all such evidence is admissible because Defendant consented to the search of his Cell Phone.[19] Finally, the State informs the Court that, should the Court find Warrant C invalid, the State will use the information it obtained via the December 13th subpoena of Defendant's call detail records to support another warrant for Defendant's location information. The State contends that because it can permissibly obtain the same evidence that this Court would exclude anyways, then all of the evidence that the State obtained from Warrant C should be admissible pursuant to the "independent source doctrine."[20]

## E. The Independent Warrant

The State offered the Independent Warrant into evidence at the suppression hearing on November 12, 2019.[21] Defendant was given leave to make additional

---

[17] State's Resp. Def.'s Mot. Suppress 9–10, Oct. 1, 2019.
[18] State's Resp. Def.'s Mot. Suppress 10–11, Oct. 1, 2019.
[19] State's Resp. Def.'s Mot. Suppress 11–15, Oct. 1, 2019.
[20] State's Resp. Def.'s Mot. Suppress 15–18, Oct. 1, 2019.
[21] State's Ex. 2.

arguments regarding the Independent Warrant. Defendant made no additional arguments challenging the validity of the Independent Warrant.[22]

## Standard of Review

On a motion to suppress evidence collected pursuant to a warrant, the defendant bears the burden of proving that the search violated his rights under the U.S. Constitution, the Delaware Constitution, or Delaware statutory law.[23] The defendant must prove his rights were violated by a preponderance of the evidence.[24]

## Discussion

Under the Fourth Amendment to the U.S. Constitution, citizens have the right to be free from unreasonable searches and seizures.[25] A warrant supported by probable cause and issued by a neutral magistrate makes a search "reasonable" for Fourth Amendment purposes. Under 11 *Del. C.* § 2306, the application for a search warrant must allege the cause for which the search is made and must recite the facts upon which such suspicion is founded.[26] Under 11 *Del. C.* § 2307, the judge issuing the search warrant may issue a warrant when the facts recited in the application

---

[22] Letter Def.'s Counsel 2, Dec. 5, 2019 ("In my review of the new search warrant, date of application October 9, 2019, and the applicable case law regarding the Independent Source Doctrine, I cannot ethically advocate that this search warrant violates my client's 4th Amendment rights in regards to his cellular telephone.").
[23] *State v. Preston*, 2016 WL 5903002, at *2 (Del. Super. Sept. 27, 2016).
[24] *State v. Lewis*, 2013 WL 2297031, at *2 (Del. Super. May 20, 2013).
[25] U.S. CONST. amend. IV.
[26] 11 *Del. C.* § 2306.

15

constitute probable cause for the search.[27] Probable cause exists when, based on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[28]

## A. Defendant's Consent

The State urges this court to uphold Warrants B and C based on Defendant's consent to the search of his cell phone. An individual's consent to a search must not be coerced, explicitly or implicitly.[29] The scope of the search that an individual consented to "must be determined from the language used in the giving of consent."[30] Here, Defendant gave the police permission to look through his phone and find phone numbers for three individuals who could verify Defendant's alibi for an alleged domestic-related incident on October 20, 2017.[31] Defendant responded "yeah" when the officer asked "Would you consent for us to go in your phone and, uh, try to find the number and all the stuff?"[32] The State has not suggested—and it would be unreasonable for the State to have suggested—that "all the stuff" refers to

---

[27] 11 *Del. C.* § 2307.
[28] *Bradley v. State*, 2019 WL 446548, at *5 (Del. Feb. 4, 2019).
[29] *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973).
[30] *State v. Ellis*, 1991 WL 247729, at *2 (Del. Nov. 4, 1991).
[31] State's Ex. 1, at 10 (Defendant consents to the officers looking at his phone to see if a specific individual called him that morning), 26 (Defendant states he has to get his sister's phone number from his phone), 27 (Defendant consents to the officers going into his phone to find his sister's number and Defendant tells the officers where they will be able to find the phone numbers for Defendant's sister, best friend, and romantic partner).
[32] State's Ex. 1, at 27.

16

all of the digital contents of Defendant's Cell Phone. The entire October 23, 2017 interview with Defendant occurred after Defendant's arrest on a warrant for a domestic-related incident on October 20th. During the course of Defendant's interview, the officers and Defendant spoke about Defendant's Cell Phone only in relation to the officers using the Cell Phone to find the phone numbers for individuals who could verify Defendant's alibi on October 20th. Therefore, a reasonable person would have understood the exchange between Defendant and the officers to be limited to the phone numbers for those three individuals and information related to those three phone numbers.[33]

Defendant's consent was limited in scope and did not give the police *carte blanche* authority to search the entire contents of Defendant's Cell Phone for any evidence of any crime. With his consent, Defendant authorized the police to search his Cell Phone for three specific phone numbers and any evidence that could reasonably fall under the purview of the plain view doctrine.[34] Defendant's limited consent does not cure any of the alleged deficiencies in Warrants B and C.

---

[33] *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"). The Court notes that the parties have not informed the Court of the information that was obtained during the officers' initial, consent-based search of Defendant's Cell Phone; therefore, the Court's finding is based on the small amount of information available to it.

[34] The requirements of the plain view doctrine are discussed by the U.S. Supreme Court in *Horton v. California*, 496 U.S. 128, 136–37 (1990).

## B.     First Motion

In Defendant's First Motion, he argues that Warrant C does not state with particularity the things to be seized, is overly broad, and has an unreasonable time limit. Warrant C was issued for the purpose of determining the GPS location of the Cell Phone's user and the subscriber information of the people whom the user contacted during a five-month period. Defendant argues Warrant C is broader than any possible probable cause finding on which it could be based and does not establish a logical nexus between his Cell Phone and the alleged murder.

Warrants must describe the things to be searched with particularity and be no broader than the probable cause upon which they are based.[35] A warrant issued for the search of a cellphone requires particular sensitivity because of the amount of private information stored on a cellphone.[36] There is a substantial risk that warrants for electronic devices could take on the character of the "general warrants" that the Fourth Amendment was designed to prohibit.[37] Accordingly, warrants for the search of a cellphone must state with particularity the information to be seized and the nexus between this information and the crime.

---

[35] *Buckham v. State*, 185 A.3d 1, 18 (Del. 2018); *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016).
[36] *Buckham*, 185 A.3d at 18.
[37] *See Wheeler*, 135 A.3d at 307 ("Instead, we caution that the risk that warrants for digital and electronic devices take on the character of 'general warrants' is substantial.").

18

Warrant C authorizes a search for cell site tower locations, subscriber information, call detail records, and all electronic communications from May 1, 2017 to October 23, 2017. The affidavit of probable cause underlying Warrant C states the two purposes for Warrant C: 1) identifying the location of the Cell Phone for the four shooting incidents connected to the 9mm handgun found on Defendant at the time of his arrest; and 2) identifying the subscriber information of the individuals whom Defendant contacted during the five-month period. Paragraph 15 of Warrant C states:

> Your affiant knows through training and experience that co-conspirators communicate via cellular telephones before, during and after the commission of a crime.[38]

Paragraph 15 is the only paragraph connecting any of the electronic communications found on Defendant's Cell Phone to the shooting of Barry White.

Paragraph 15 contains the same generalized language that the Delaware Supreme Court rejected in *Buckham v. State*.[39] The Supreme Court found "particularly unpersuasive" the officer's statement that "criminals often communicate through cellular phones."[40] In *Buckham*, the Supreme Court found that the affidavit's "generalized suspicions" did not provide a substantial basis to

---

[38] Def.'s Mot. Suppress Ex. A, Sept. 6, 2019.
[39] *Buckham*, 185 A.3d at 17 ("Buckham is right that many of the allegations in the warrant application are too vague and too general to connect his cell phone to the shooting.").
[40] *Id.*

19

support a finding of probable cause.[41] The instant case, however, is fundamentally different from *Buckham*. In *Buckham*, the Supreme Court dealt with specific items of evidence, such as Facebook messages.[42] Here, the parties have not told the Court what specific information the State obtained from Warrant C; therefore, the Court's reasoning is based on Defendant's request that this Court suppress *all of* the evidence obtained from the execution of Warrant C.

A search warrant's description is "with particularity" when it limits the search of the cellphone to certain types of data, media, and files which are pertinent to the investigation.[43] Warrant C is not sufficiently particularized because it allows the police to search Defendant's Cell Phone for "any and all electronic communications" within a five-month period. As the State recognized, Warrant C contained "probable cause to search for communication and location data, however, the warrant did not limit the search with particularity."[44] Warrant C permits police to search for evidence of an alleged murder that occurred on September 3, 2017; the request for all of Defendant's electronic communications over a five-month period is simply too broad in the context of this offense. According to the State, "the appropriate remedy would be to excise the evidence that is outside of the scope of probable cause and

---

[41] *Id.*
[42] *Id.* at 15.
[43] *State v. Westcott*, 2017 WL 283390, at *3 (Del. Super. Jan. 23, 2017).
[44] State's Resp. Def.'s Mot. Suppress 11, Oct. 1, 2019.

20

only admit the cell tower location information."[45]  However, the State also argues that all of the evidence obtained from Warrant C should not be suppressed because of Defendant's consent and the independent source doctrine.  The Court has addressed Defendant's consent above; Defendant's consent is not sufficient to cure the deficiencies in Warrant C.

The independent source doctrine is also not sufficient to cure all of the deficiencies in Warrant C.  The independent source doctrine is an exception to the exclusionary rule.[46]  Under the independent source doctrine, facts that are obtained illegally do not "become sacred and inaccessible"; instead, if knowledge of these facts is gained from "an independent source" then they may be proven just like any other facts.[47]  The facts set forth in the affidavit underlying the Independent Warrant are based on information that the officer obtained from an independent source—the December 13th subpoena of Metro PCS.[48]  Although the Independent Warrant does not suffer from the same alleged deficiencies as Warrant C, it allows for a search

---

[45] State's Resp. Def.'s Mot. Suppress 11, Oct. 1, 2019 (citing *State v. Anderson*, 2018 WL 6177176, at *5 (Del. Super. Nov. 5, 2018) (finding that the objectives of deterrence and integrity would also be served by limiting the suppression to the fruits of the warrant's defects)).
[46] *Norman v. State*, 976 A.2d 843, 859 (Del. 2009).
[47] *Id.* (quoting *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920)).
[48] State's Ex. 2, ¶¶ 6–7.

21

which is more limited in scope than the search allowed by Warrant C.[49]  Therefore, even if the Independent Warrant cures some of Warrant C's defects, it does not cure all of Warrant C's defects.

The Independent Warrant is not broader than the probable cause upon which it is based and is sufficiently particular.  First, the Independent Warrant allows the police to search Defendant's Cell Phone for a shorter period of time than the five-month time period provided for in Warrant C.  The Independent Warrant's shorter time period prohibits "exploratory rummaging" and permits a limited search for information related to the killing of Barry White only.  The scope of the Independent Warrant does not outrun the probable cause finding upon which it is based.[50]  Second, the Independent Warrant is more particularized than Warrant C, which authorized the police to search for "any and all electronic communication" on Defendant's Cell Phone within a five-month period.  The Independent Warrant only allows the police to search for text messages sent from and received by Defendant's Cell Phone in the 24 hours surrounding the shooting of Barry White.  The Independent Warrant's limited time period and limited scope satisfies the

_____

[49] In his Second Motion, Defendant argues that Paragraph #6 of the affidavit underlying Warrant C uses information impermissibly obtained outside the scope of Warrant A.  Def.'s Mot. Suppress 3, 7–8, July 22, 2019.

[50] *See Buckham*, 185 A.3d at 17–18 (finding that the warrant was mismatched to the probable cause justifying it because the warrant created a sufficient basis to search for the defendant's GPS data but did not create a sufficient basis for the police to search all of the contents of the defendant's cell phone).

particularity requirement.[51] Therefore, the Independent Warrant creates a "later, lawful seizure that is genuinely independent of an earlier, tainted one."[52]

The independent source doctrine applies to the Independent Warrant. Information obtained pursuant to Warrant C that the police also obtained pursuant to the Independent Warrant should not suppressed. However, any information that the police obtained pursuant to Warrant C that the police did not also obtain from the execution of the Independent Warrant should be suppressed.

Defendant's First Motion is DENIED IN PART and GRANTED IN PART because the Independent Warrant cures some of the deficiencies in Warrant C.

**C. Second Motion**

In Defendant's Second Motion, he argues that the affidavit underlying Warrant C included information obtained outside the scope of Warrant A. Defendant urges this Court to strike this "illegally obtained evidence" from the affidavit underlying Warrant C and evaluate whether the affidavit still establishes sufficient probable cause to search Defendant's Cell Phone.

---

[51] *See Wheeler*, 135 A.2d at 305. The Delaware Supreme Court stated:
> Where, as here, the investigators had available to them a more precise description of the alleged criminal activity that is the subject of the warrant, such information should be included in the instrument and the search and seizure should be appropriately narrowed to the relevant time period so as to mitigate the potential for unconstitutional exploratory rummaging.

*Id.*

[52] *Murray v. United States*, 487 U.S. 533, 542 (1988).

23

The Independent Warrant solves Defendant's perceived problem with Warrant C. Defendant challenges Paragraph #6 of Warrant C, which states in relevant part: "The device's cellular number was determined to be [***-***]-1230 and was *in use during the time frames of all of the mentioned incidents that were ballistic matches to the firearm* that Johnson was found in possession of on 10/23/2017."[53] Defendant alleges that the police impermissibly obtained the information about Defendant's phone being "in use" in May 2017 by going outside the scope of Warrant A.[54] The affidavit underlying the Independent Warrant also states that Defendant's phone was "in use" in May 2017; the difference, however, is that the information in the affidavit underlying the Independent Warrant was obtained as a result of a lawful subpoena of Defendant's phone company. Thus, the Independent Warrant is not plagued by the alleged deficiencies in Paragraph #6 of the affidavit underlying Warrant C.[55]

---

[53] Def.'s Mot. Suppress Ex. 2, July 22, 2019 (emphasis added).
[54] Although Defendant alleges that Paragraph #6 from Warrant C includes information impermissibly obtained outside the scope of Warrant A, Def.'s Mot. Suppress 3, 7–8, July 22, 2019, the State alleges that Paragraph #6 from Warrant C includes information obtained from Warrant B, State's Resp. Def.'s Mot. Suppress 5 n.7, Oct. 1, 2019. The Court has not received evidence supporting either theory; thus, the Court declines to make a finding on the source of the information in Paragraph #6.
[55] *See Norman*, 976 A.2d at 859 (finding that facts obtained from an independent source can be admitted even if those facts were first obtained illegally).

24

As discussed above, any information obtained from Warrant C that was also obtained from the Independent Warrant is found to be validly obtained. Any information obtained from Warrant C that was not also obtained from the Independent Warrant is suppressed. Defendant's Second Motion to Suppress is DENIED because this Court's decision on Defendant's First Motion addresses the issues that Defendant alleges in his Second Motion.

### D. Third Motion

In Defendant's Third Motion, he argues that the affidavit underlying Warrant B failed to establish a nexus between the crimes investigated and Defendant's Cell Phone because it contains merely generalized suspicions. Defendant analogizes between the language used in the affidavit underlying Warrant B and the search warrant application in *Buckham*. Defendant challenges the WPD detective's statement that based on his "training, knowledge, and experience" individuals involved in criminal acts use cellphones to communicate.[56]

As the Delaware Supreme Court clarified in *Buckham*, "the constitutional requirement that there be a nexus between the crime and the place to be searched is also enshrined in Delaware law."[57] In *Buckham*, the Supreme Court found that many of the allegations in the warrant application were too vague and too general to

---

[56] Def.'s Mot. Suppress 6, Sept. 6, 2019.
[57] *Buckham*, 185 A.3d at 16 (citing 11 *Del. C.* § 2306).

connect Buckham's cellphone to the crime.[58]   The Supreme Court found "particularly unpersuasive" the statement that "criminals often communicate through cellular phones."[59]

In the instant case, the affidavit underlying Warrant B does not establish a logical nexus between Defendant's Cell Phone and the killing of Barry White. Unlike in *State v. Rizzo*—where this Court found that there was a nexus between the cellphone and the crime because the affidavit stated that the defendant would text or call the victim[60]—nothing in the affidavit underlying Warrant B connects Defendant's Cell Phone to the alleged murder.   Indeed, the affidavit underlying Warrant B only twice mentions Defendant's Cell Phone: 1) Defendant had the Cell Phone in his possession when he was arrested; and 2) "persons involved in criminal acts will utilize Mobile Electronic Devices such as cellular telephones to further facilitate their criminal acts and/or communicate."[61] "The mere fact that a defendant owns a mobile phone is not, in and of itself, sufficient to warrant an inference that evidence of any crime he or she commits may be found on that mobile phone."[62] The generalized information in the affidavit about how "persons involved in criminal

---

[58] *Id.* at 17.
[59] *Id.* In response to the statement that "criminals often communicate through cellular phones," the Supreme Court remarked "who doesn't in this day and age?" *Id.*
[60] *State v. Rizzo*, 2018 WL 566794, at *2 (Del. Super. Jan. 26, 2018).
[61] Def.'s Mot. Suppress Ex. A, Sept. 6, 2019.
[62] *Westcott*, 2017 WL 283390, at *2.

acts" use cellphones to communicate is too vague and too general to create a nexus between Defendant's Cell Phone and the alleged murder.[63]

Defendant also argues that Warrant B authorized a search that was broader than the search authorized by the warrant in *Buckham*.[64] The *Buckham* warrant did not limit the search of Buckham's cellphone to any relevant time frame.[65] Dissimilarly, Warrant B limits the search of Defendant's Cell Phone to a five-month period—May 1, 2017 through October 23, 2017. This temporal limitation differentiates Warrant B from the *Buckham* warrant. The affidavit underlying Warrant B properly establishes a sufficient basis for obtaining information for the

---

[63] *Cf. State v. Albert*, 2015 WL 7823393, at *4 (Del. Super. Dec. 3, 2015) (finding that the facts in the affidavits underlying the warrants were sufficient to create a nexus between the crimes and the defendant's cell phone because the affidavits stated that defendant and another individual were involved in selling heroin and that the officer knew that criminals used cellphones to communicate). In *Albert*, this Court relied on *United States v. Gholston*, where the U.S. District Court for the Eastern District of Michigan clarified the narrow instance when a generalized statement by an officer would be sufficient to create a nexus between the alleged crime and the defendant's cell phone:

> [A] number of courts have found that an affidavit establishes probable cause to search a cell phone when it describes evidence of criminal activity involving multiple participants and includes the statement of a law enforcement officer, based on his training and experience, that cell phones are likely to contain evidence of communications and coordination among these multiple participants.

*United States v. Gholston*, 993 F. Supp. 2d 704, 720 (E.D. Mich. 2014). Unlike *Gholston* and *Albert*, the affidavit underlying Warrant B did not provide facts about Defendant and any other individual regarding the shooting of Barry White.
[64] Def.'s Mot. Suppress 7, Sept. 6, 2019.
[65] *Buckham*, 185 A.3d at 19.

five-month period because the affidavit connects the firearm found in Defendant's possession to several other shooting incidents over that five-month period.

Despite the distinctions between Warrant B and the *Buckham* warrant, Defendant's Third Motion to Suppress is GRANTED because the affidavit underlying Warrant B establishes no logical nexus between Defendant's Cell Phone and the alleged murder.

## Conclusion

Defendant has not challenged Warrant A; the Court makes no findings about the validity of Warrant A. The Court finds Warrant B does not establish a logical nexus between Defendant's Cell Phone and the alleged murder and thus, suppresses all of the evidence obtained from the execution of Warrant B. Finally, the Court finds the Independent Warrant addressed only some of the deficiencies in Warrant C and thus, the Court suppresses any information obtained from the execution of Warrant C that was not obtained from the execution of the Independent Warrant. For the aforementioned reasons, Defendant's Motion to Suppress filed on July 19, 2019 is **DENIED IN PART** and **GRANTED IN PART,** Defendant's Motion to Suppress filed on July 22, 2019 is **DENIED,** and Defendant's Motion to Suppress filed on September 6, 2019 is **GRANTED.**

**IT IS SO ORDERED.**

_____
**The Honorable Calvin L. Scott, Jr.**